IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARIETTA GARCIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   NO. CIV-05-1447-HE |
| | ) |
| BELLECARE, INC., d/b/a | ) |
| NORTHWEST NURSING CENTER, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Marietta Garcia sued her former employer, defendant Bellecare, Inc., asserting claims for hostile work environment based on national origin and sex, discriminatory discharge based on national origin and sex, and retaliation, under Title VII of the Civil Rights Act of 1964. Defendant has moved for summary judgment on all of plaintiff's claims.

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and…the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence and any reasonable inferences that might be drawn from it are viewed in the light most favorable to the nonmoving party. Davidson v. America Online, Inc., 337 F.3d 1179, 1182 (10th Cir. 2003). Having applied the Rule 56 standard to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," Jeffries v. Kansas, 147 F.3d 1220, 1228 (10th Cir. 1998) (internal quotation and citation omitted),

the court concludes the defendant's motion should be denied.

# BACKGROUND

The plaintiff's deposition testimony, supplemented by a declaration attached to her response brief,[1] is the only evidence offered as to the bulk of the facts and circumstances involved here. Plaintiff's testimony was that she worked for defendant as a housekeeper, beginning her employment in December, 2003, and ending it in April, 2004.

She testified to an ongoing series of comments or actions of a racial/national origin or sexual nature by her supervisor, Wes O'Rourke, beginning soon after her employment and continuing throughout her employment. She testified that O'Rourke repeatedly made comments to the effect that she was a Mexican, urged her to go back to Mexico, told her that "her kind" needed to be working at McDonald's, and repeatedly referred to plaintiff and other Hispanic employees as "Mexicantos".

She also testified that O'Rourke made numerous comments or took various actions of a sexual nature. She asserts that, among other things, he asked if she had a boyfriend, told her he could be her boyfriend, and gave her lollipops with love messages on them. He attempted to hug her on several occasions, tried to poke her side, asked her to sit on his lap, used the microphone at the front desk to say he loved plaintiff and call her name, and touched

---

[1]*Defendant argues that plaintiff's declaration should be disregarded, suggesting it is inconsistent with her deposition testimony and is an attempt to create a sham fact issue. However, defendant does not point to any particular inconsistency. The declaration appears to be substantially consistent with plaintiff's deposition testimony, expanding on some details. The court concludes there is no basis for striking or otherwise ignoring the declaration in the circumstances existing here. See Franks v. Nimmo, 796 F.2d 1230 (10th Cir. 1986).*

her shoulders and hair. On various occasions, he would lay on the bed in the room she was cleaning, pat it, and ask plaintiff to lay down with him. Plaintiff testified that, on various occasions while she was cleaning a room, O'Rourke would stare at her, ask her what she was doing, and, when she did not respond positively to his sexual insinuations or flirting, become angry and begin "nitpicking" her work. She testified that on one occasion O'Rourke kissed plaintiff on the forehead in front of a resident. On another occasion a few days before her termination, he entered the room plaintiff was cleaning and asked her what her problem was. When plaintiff responded that she had no problem and was just trying to clean the room, O'Rourke allegedly replied "Yes, I know you have a problem", grabbed his genital area, moved in a sexual manner, and said "This is what you need." Plaintiff's deposition at 32.

Plaintiff testified that she found O'Rourke's conduct objectionable, that she asked him to stop and, on one occasion, threatened to report him to the administrator of the facility. According to plaintiff, O'Rourke replied to the effect that, if she reported him, he would have both her and the facility administrator fired through his family relationship with the owners of the facility.[2]

The events precipitating plaintiff's discharge occurred on April 11, 2004.[3] Plaintiff testified she was cleaning a resident's room when O'Rourke told her to go to another hall. Plaintiff asked O'Rourke why, he repeated his command, and, according to her, she said

---

[2] *Plaintiff states that she also discussed O'Rourke's conduct with the cafeteria manager and, after her alleged termination, with the administrator of the facility.*

[3] *Defendant disputes that plaintiff was discharged but, viewing the evidence in the light most favorable to plaintiff, the court assumes for present purposes that plaintiff was terminated.*

okay. Plaintiff went to get her housekeeping cart and the resident asked her what was going on. Plaintiff responded that she didn't know. O'Rourke then said "I told you to go down to the other halls and work." Plaintiff replied "Well, I need to get my stuff." O'Rourke allegedly said "You need to just clock out. You need to just clock out and leave" and then he clocked plaintiff out. Plaintiff's deposition at p. 37-39. The next day when plaintiff returned to work she was given a reprimand for insubordination. *Id.* at p. 39. She refused to sign the reprimand because she believed it was not true. *Id.* at p. 40. She was told that she was suspended for three days and plaintiff left. *Id.* at p. 41, 4-5. On the same day, plaintiff filed a claim with the Equal Employment Opportunity Commission. *Id.* at p. 23-24. Plaintiff states she called the nursing center while on suspension and asked how long she was going to be suspended, but was not told when she could return to work. On April 26, 2004, plaintiff returned to the facility to pick up her paycheck and meet with the facility administrator. She encountered O'Rourke who, according to plaintiff, was aware of her EEOC filing, and who acted in a threatening manner toward her.

## DISCUSSION

I.      **Hostile Work Environment**

"To survive summary judgment, a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" and "must also produce evidence from which a rational jury could infer that she was targeted for harassment because of her gender, race, or

4

national origin."  <u>Sandoval v. City of Boulder</u>, 388 F.3d 1312, 1326-7 (Cir. 10th 2004) (internal quotation and citation omitted).  The harassment must be both subjectively and objectively pervasive or severe.  <u>Witt v. Roadway Expressway</u>, 136 F.3d 1424, 1432 (10th Cir. 1998).  "Although the comment need not have inflicted psychological injury on [plaintiff], if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation."  *Id.* at 1433 (internal quotation and citation omitted).  Whether an environment is hostile is determined "by looking at the totality of circumstances, such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance;…whether it unreasonably interferes with an employee's work performance; and the context in which the conduct occurred."  <u>Smith v. Northwest Financial Acceptance, Inc</u>., 129 F.3d 1408, 1413 (10th Cir. 1997).  Any relevant factor may be considered but no single factor is determinative.  *Id.*

    **A.**    **Hostile work environment - national origin.**

The court concludes that plaintiff has presented sufficient evidence to create a triable issue as to whether a hostile work environment based on national origin existed. Construing the evidence in the light most favorable to plaintiff, the extensive nature of the derogatory references to plaintiff or others as "Mexicantos" and the like, in the circumstances existing here,[4] is sufficient to create a factual issue as whether a hostile work environment was

---

[4]*Evidence of hostility towards plaintiff based on her national origin may be aggregated with evidence of sexual hostility, discussed below, in determining the existence of a hostile work*

objectively present. The question is close as to whether plaintiff subjectively viewed the national origin comments as creating a hostile work environment. Plaintiff testified that when O'Rourke made comments concerning her being from Mexico, plaintiff "would just roll [her] eyes, because [she] was like, he's just weird." Plaintiff's deposition, p. 45. She also stated that she "could kind of blow off" O'Rourke's comments calling her "Mexicanto" and saying that she needed to go back to Mexico. *Id.* at p.48-49. However, construing the evidence in plaintiff's favor, and considering the interrelationship with the sexually oriented comments and actions which plaintiff clearly states she objected to, the court concludes plaintiff has put forward sufficient evidence to withstand summary judgment on the national origin hostile work environment claim.

### B.     Hostile work environment - gender/sex.

Plaintiff has presented sufficient evidence to create a triable issue as to her hostile work environment claim based on gender. She has adequately demonstrated that she subjectively perceived the environment to be hostile.[5] Plaintiff testified that she repeatedly objected to O'Rourke's sexually harassing conduct. Plaintiff stated that O'Rourke made her life at work miserable because of her "not going along with his sexual insinuations." Plaintiff's deposition p. 43. Plaintiff further stated that she felt "humiliated and angry" and

---

*environment. Northwest Financial Acceptance, Inc., 129 F.3d 1408, 1413 (10th Cir. 1997).*

[5]*Defendant's reliance in its initial brief on plaintiff's statement that the thing "that really bothered [her] is that [O'Rourke] called the residents merchandise" is unpersuasive, as it takes this statement out of context and disregards other relevant portions of her deposition.*

that his actions made her "feel very uncomfortable." Plaintiff's declaration, ¶¶3 & 4. Further, the alleged comments and actions described above are sufficient to establish the existence of a triable issue as to whether the environment was hostile from an objective standpoint. Defendant's motion must therefore be denied as to plaintiff's claim for hostile work environment based on sex or gender.

## II.    Discriminatory Discharge

The McDonnell Douglas[6] analytical framework guides the court's review of plaintiff's sex and race discrimination claims. Antonio v. Sygma Network, Inc., 458 F.3d 1177, 1181 (10th Cir. 2006). Plaintiff must first establish a prima facie case of prohibited employment action. Green v. New Mexico, 420 F.3d 1189, 1192 (10th Cir.2005). If she makes a prima facie showing, the burden shifts to defendant to state a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* "If the employer meets this burden, then summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual." *Id.* (internal quotations omitted). Here, a prima facie case of discriminatory discharge requires a showing that (1) plaintiff belongs to a protected class; (2) was qualified for her job; and (3) despite her qualifications, was discharged. *Id.* at 1192, n. 3.

Plaintiff has made out a prima facie showing of discriminatory discharge. She is a Hispanic female. She has put forth sufficient evidence that she was qualified for her job as

---

[6]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

a housekeeper and that, despite her qualifications, she was discharged from employment. Defendant has offered a legitimate, nondiscriminatory reason for the termination of plaintiff's employment — her alleged insubordination in refusing to leave a resident's room or clean a different hall. However, plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether defendant's explanation was pretextual.

Pretext can be shown by "evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Antonio, 458 F.3d at 1183. When assessing a contention of pretext, the court "look[s] at the facts as they appear to the person making the decision to terminate, not the aggrieved employee." Green, 420 F.3d at 1191, n. 2. Here, however, the court concludes the dispute as to what actually occurred on April 11, coupled with the evidence as to the history of sexual and other harassment by Mr. O'Rourke, the same supervisor who reprimanded her for insubordination, is sufficient to create a triable issue as to whether defendant's stated reason for the discharge was pretextual or not. Therefore, defendant's motion must be denied as to plaintiff's claims of discriminatory discharge based on sex and national origin.

### III.   Retaliation

The plaintiff's retaliation claim is also analyzed under the McDonnell Douglas burden-shifting framework discussed above. Antonio, 458 F .3d at 1181. Plaintiff initially must show that "(1) she engaged in protected opposition to discrimination; (2) she suffered

an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between her opposition and the employer's adverse action." *Id.*

Here, plaintiff made a sufficient showing that she engaged in protected activity. Plaintiff complained about O'Rourke's conduct to O'Rourke, who was her immediate supervisor, and to a cafeteria supervisor.[7]  Plaintiff's deposition, p. 28-29 & 36.  She also filed an EEOC complaint. Plaintiff presented adequate evidence that she suffered an adverse action.  Further, plaintiff's evidence is sufficient to create a material issue of fact as to whether a causal connection existed between her protected activity and her alleged discharge. O'Rourke made racial remarks after plaintiff complained to him about his behavior, as well as threats related to her job. Plaintiff filed her EEOC complaint on April 12, 2004, and was terminated soon thereafter. Plaintiff alleges defendant, through Mr. O'Rourke, was aware of the EEOC filing. Given the relatively short time span between the instances of protected activity and her termination, and all the circumstances existing here, a rational jury could find that defendant terminated plaintiff's employment due to her activity in opposing discrimination. *See* Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999 (holding "[a] retaliatory motive may be inferred when an adverse action closely follows protected activity"). As discussed above, while defendant has put forth a legitimate, nondiscriminatory reason for plaintiff's discharge, the court concludes that a genuine issue of material fact exists as to whether defendant's asserted reason for termination is pretextual.

---

[7]*Her complaint to the facility administrator apparently came after the decision to terminate her, hence the adverse action could not have been in reaction to that otherwise protected activity.*

Therefore, defendant's motion must be denied as to plaintiff's retaliation claim.

Accordingly, defendant's motion for summary judgment [Doc. #21] is **DENIED**.

**IT IS SO ORDERED**.

Dated this 9th day of January, 2007.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE